No. 15-2667

---

UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

---

Grand Juror Doe,

Appellant,

v.

Robert P. McCulloch, in his official capacity as Prosecuting Attorney for St. Louis
County, Missouri,

Appellee.

---

Appeal from the United States District Court
for the Eastern District of Missouri

---

Brief of Appellant

---

Anthony E. Rothert
Jessie Steffan
Gillian R. Wilcox
American Civil Liberties Union
　　of Missouri Foundation
454 Whittier Street
St. Louis, Missouri 63108
(314) 652-3114

Sowers & Wolf, LLC
D. Eric Sowers
Ferne P. Wolf
Joshua M. Pierson
530 Maryville Centre Drive
Suite 460
St. Louis, Missouri 63141
(314) 744-4010

***Attorneys for Plaintiff-Appellant***

## SUMMARY OF THE CASE

Appellant Grand Juror Doe is a member of the grand jury charged with considering whether to indict former police officer Darren Wilson for the shooting death of an unarmed teenager. The grand jury declined to indict. Thereafter, prosecuting attorney Robert McCulloch held a press conference in which he publicly discussed the grand jury proceeding and the grand jurors' purported views, released certain transcripts, and characterized portions of the evidence.

Appellant Doe then brought this suit, challenging the constitutionality of Missouri statutes prohibiting and/or criminalizing her disclosure of information about her experience on that grand jury. She argues those statutes, as applied to her in the circumstances of this case, violate her free-speech rights.

The district court dismissed Doe's suit on abstention grounds, holding that, "Missouri courts should be given the opportunity to resolve this issue before Juror pursues a federal constitutional challenge." Thereafter, Doe timely moved the district court to stay, rather than dismiss, the action. The district court denied the motion, explaining it had not applied *Pullman* abstention—as Doe had understood— but rather the abstention doctrine defined in *Burford*.

Appellant appeals the dismissal under *Burford*. Although *Pullman* abstention might be appropriate, the court should have stayed, rather than dismissed, her First Amendment claim. Appellant requests oral argument of fifteen minutes.

1

# TABLE OF CONTENTS

SUMMARY OF THE CASE.................................................................1

TABLE OF AUTHORITIES ............................................................4

JURISDICTIONAL STATEMENT....................................................8

STATEMENT OF THE ISSUES......................................................9

STATEMENT OF THE CASE........................................................10

STANDARD OF REVIEW ............................................................17

SUMMARY OF THE ARGUMENT ................................................18

ARGUMENT .................................................................................19

    I.    ***BURFORD* ABSTENTION IS NOT APPROPRIATE**.................19

        *A.*     *Burford v. Sun Oil Company*......................................20

        B.     The Supreme Court's *Burford* jurisprudence ...........22

        C.     This Court's *Burford* jurisprudence..........................26

        D.     *Burford* does not apply in this case, where there is no complex state regulatory system, Missouri has no unique economic interest, Missouri has not designated a specialized forum for this claim, and Doe has asserted only a federal constitutional claim......................................27

            *1.*     *Missouri has no unique interest at stake in this action* ...............................................................28

            *2.*     *There is no complex regulatory system at issue* .............29

Appellate Case: 15-2667    Page: 3    Date Filed: 08/26/2015 Entry ID: 4310278

      3.     *Missouri has not designated a specialized state*

            *forum to hear this kind of claim* ....................................30

      4.     *State and local interest does not justify*

            *dismissal, which is an unprecedented*

            *conclusion for an as-applied constitutional*

            *challenge to a criminal statute* ......................................31

II.    **ASSUMING *PULLMAN* ABSTENTION APPLIES, THE DISTRICT COURT SHOULD HAVE RETAINED JURISDICTION**.................................................................32

**CONCLUSION**...................................................................................36

**CERTIFICATE OF COMPLIANCE** ................................................37

**CERTIFICATE OF SERVICE** ..........................................................39

Appellate Case: 15-2667    Page: 4    Date Filed: 08/26/2015 Entry ID: 4310278

# TABLE OF AUTHORITIES

## *Cases*

*Alabama Pub. Serv. Comm'n v. S. Ry. Co.*, 341 U.S. 341 (1951) ..........................22

*Allegheny Cnty. v. Frank Mashuda Co.,* 360 U.S. 185 (1959)................................24

*Alsager v. Dist. Ct. of Polk Cnty.*, 518 F.2d 1160 (8th Cir. 1975) ..........................34

*Ankenbrandt v. Richards*, 504 U.S. 689 (1992)....................................................22

*Ass'n for Retarded Citizens of N.D. v. Olson*, 713 F.2d 1384 (8th Cir. 1983)....9, 27

*Bauer v. Transitional Sch. Dist. of St. Louis*, 88 F. Supp. 2d 999 (E.D. Mo. 2000)

.................................................................................................................26

*Beacon Journal Pub. Co. v. Unger*, 532 F. Supp. 55 (N.D. Ohio 1982)................29

*Beavers v. Ark. State Bd. of Dental Exam'rs*, 151 F.3d 838 (8th Cir. 1998).... 15, 17

*Bldg. Owners & Managers Ass'n of Metro. St. Louis, Inc. v. City of St. Louis*, No.

4:08CV352 HEA, 2008 WL 4948453 (E.D. Mo. Nov. 10, 2008) ......................34

*Bob's Home Serv., Inc. v. Warren Cnty.*, 755 F.2d 625 (8th Cir. 1985)  9, 31, 33, 35

*Brillhart v. Excess Ins. Co. of Am.,* 316 U.S. 491 (1942).......................................19

*Burford v. Sun Oil Co.*, 319 U.S. 315 (1943) .................................................. *passim*

*Butterworth v. Smith*, 494 U.S. 624 (1990) ............................................................29

*C.R. v. Adams*, 649 F.2d 625 (8th Cir. 1981)........................................................34

*Casey v. FDIC*, 583 F.3d 586 (8th Cir. 2009) .......................................................31

*Chicago, B. & Q. R.R. Co. v. City of N. Kansas City* ...............................................34

4

*City of Jefferson City v. Cingular Wireless, LLC*, 531 F.3d 595 (8th Cir. 2008)....17

*Coley v. Clinton*, 635 F.2d 1364 (8th Cir. 1980) ................................................9, 33

*Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). 19, 25

*Easter v. Olson*, 552 F.2d 252 (8th Cir. 1977).........................................................34

*Edwards v. Ark. Power & Light Co.*, 683 F.2d 1149 (8th Cir. 1982).....................34

*England v. La. State Bd. of Med. Exam'rs*, 375 U.S. 411 (1964)................... *passim*

*Frisby v. Schultz*, 487 U.S. 474, 484 (1988).........................................................13

*Fru-Con Const. Corp. v. Controlled Air, Inc.*, 574 F.3d 527 (8th Cir. 2009) ........28

*Geier v. Mo. Ethics Comm'n*, 715 F.3d 674 (8th Cir. 2013) ...................................34

*Great Plains Trust Co. v. Union Pac. R.R. Co.*, 492 F.3d 986 (8th Cir. 2007).......33

*Green v. Phillips Petroleum Co.*, 119 F.2d 466 (8th Cir. 1941)...............................34

*Growe v. Emison*, 507 U.S. 25 (1993) ............................................................ 34, 35

*Guillemard–Ginorio v. Contreras–Gomez*, 585 F.3d 508 (1st Cir. 2009) .............19

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947).....................................................24

*Hostetter v. Idlewild Bon Voyage Liquor Corp.*, 377 U.S. 324 (1964) ..................23

*Kaiser Steel Corp. v. W. S. Ranch Co.*, 391 U.S. 593 (per curiam) (1968).............23

*La. Power & Light Co. v. City of Thibodaux*, 360 U.S. 25 (1959).........................19

*Lewis v. BT Inv. Managers, Inc.*, 447 U.S. 27 (1980) ............................................22

*Lumbermen's Mut. Cas. Co. v. Elbert*, 348 U.S. 48 (1954) ...................................23

*Melahn v. Pennock Ins., Inc.*, 965 F.2d 1497 (8th Cir. 1992) .......... 9, 19, 25, 26, 30

5

*Meredith v. City of Winter Haven*, 320 U.S. 228 (1943) ........................................23

*Moe v. Brookings Cnty.*, 659 F.2d 880 (8th Cir. 1981) ..........................................26

*Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983)..... 20, 34

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350

   (1989) (*NOPSI*) .............................................................................. *passim*

*Order of Ry. Conductors of Am. v. Pitney*, 326 U.S. 561 (1946) ...........................23

*People Tags, Inc. v. Jackson Cnty. Legislature*, 636 F. Supp. 1345 (W.D. Mo.

   1986) ...............................................................................................26

*Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996) ................................. *passim*

*R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941)........................... *passim*

*Record Head Inc. v. Olson*, 476 F. Supp. 366 (D.N.D. 1979).................................32

*Reprod. Health Servs. of Planned Parenthood of St. Louis Region, Inc. v. Nixon*,

   428 F.3d 1139 (8th Cir. 2005) ...................................................... 32, 33

*Robinson v. City of Omaha*, 866 F.2d 1042 (8th Cir. 1989)...................................34

*Snyder's Drug Stores v. Taylor*, 227 F.2d 162 (8th Cir. 1955) ..............................34

*Spector Motor Serv. v. McLaughlin*, 323 U.S. 101, 105 (1944).............................23

*Sprint Commc'ns, Inc. v. Jacobs,* 134 S. Ct. 584 (2013)........................................22

*Steffel v. Thompson*, 415 U.S. 452 (1974) ...............................................31

*Stilp v. Contino*, 743 F. Supp. 2d 460 (M.D. Pa. 2010)..........................................29

*Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688 (8th Cir. 1997) ....................28

6

*United States v. Kentucky*, 252 F.3d 816 (6th Cir. 2001) .........................................17

*Warmus v. Melahn*, 110 F.3d 566 (8th Cir. 1997) ...................................................25

*Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995) ......................................................19

*Wisconsin v. Constantineau*, 400 U.S. 433 (1971) ..................................................34

*Worrell Newspapers of Ind., Inc. v. Westhafer*, 739 F.2d 1219 (7th Cir. 1984) .....29

*Younger v. Harris*, 401 U.S. 37 (1971).......................................................... 14, 19

*Zablocki v. Redhail*, 434 U.S. 374 (1978) .............................................................22

## *Statutes*

28 U.S.C. § 1291 .........................................................................................8

28 U.S.C. § 1331 .........................................................................................8

28 U.S.C. § 1343(a)(3) .................................................................................8

42 U.S.C. § 1983 .........................................................................................8

Mo. Rev. Stat. § 540.080 ....................................................................... 10, 13

Mo. Rev. Stat. § 540.120 ....................................................................... 10, 13

Mo. Rev. Stat. § 540.310 ....................................................................... 10, 13

Mo. Rev. Stat. § 540.320 ....................................................................... 10, 13

Mo. Rev. Stat. § 540.260 ...........................................................................11

Appellate Case: 15-2667    Page: 8    Date Filed: 08/26/2015 Entry ID: 4310278

# JURISDICTIONAL STATEMENT

In the district court, jurisdiction over Appellant's cause of action, arising under the Constitution of the United States and 42 U.S.C. § 1983, was authorized by 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3).

This Court has jurisdiction over Appellant's timely appeal from the district court's final judgment pursuant to 28 U.S.C. § 1291.

Judgment was entered on May 5, 2015. (J.A. 0614.) A motion to alter or amend judgment was filed on June 1, 2015. (J.A. 0615.) The motion was denied on June 23, 2015. (J.A. 0676.) Notice of Appeal was filed on July 23, 2015. (J.A. 0679.)

## STATEMENT OF THE ISSUES

**I.** **Whether the district court erred in applying *Burford* abstention.**

*Burford v. Sun Oil Co.,* 319 U.S. 315 (1943)

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350 (1989) (*NOPSI*)

*Ass'n for Retarded Citizens of N.D. v. Olson*, 713 F.2d 1384 (8th Cir. 1983)

*Melahn v. Pennock Ins., Inc.*, 965 F.2d 1497 (8th Cir. 1992)


**II.** **Whether the district court erred in dismissing rather than staying this action.**

*R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941)

*England v. La. State Bd. of Med. Exam'rs*, 375 U.S. 411 (1964)

*Coley v. Clinton*, 635 F.2d 1364 (8th Cir. 1980)

*Bob's Home Serv., Inc. v. Warren Cnty.*, 755 F.2d 625 (8th Cir. 1985)

Appellate Case: 15-2667    Page: 10    Date Filed: 08/26/2015 Entry ID: 4310278

## STATEMENT OF THE CASE

This is an as-applied First Amendment challenge to Mo. Rev. Stat. §§ 540.080, 540.120, 540.310, and 540.320, and any other provision of Missouri law prohibiting Appellant, Grand Juror Doe, from discussing or expressing an opinion about her grand jury service, the witnesses and evidence, the State's legal advice to the grand jury, and Appellee's mischaracterizations of her views.[1]

This case arises from Doe's service on a Missouri grand jury. In May 2014, Doe began serving as a grand juror for a term originally scheduled to end on September 10, 2014. Several weeks prior to the scheduled end of that term, service was extended to no later than January 2015 to have the grand jury investigate former police officer Darren Wilson, who shot and killed unarmed teenager Michael Brown on August 9, 2014.

McCulloch, as the prosecuting attorney for St. Louis County, was the government official with authority to initiate a state criminal prosecution against Wilson for his actions. McCulloch delegated to the grand jury the decision about whether there was probable cause to believe Wilson violated any state criminal laws. But McCulloch remained responsible for deciding what evidence the State would present to the grand jury, what evidence the State would withhold, how the

-----

[1] The district court permitted Appellant to proceed anonymously. (*See* J.A. 0074.) As the district court did, Appellant will refer to herself using the pronouns "she" and "her."

Appellate Case: 15-2667    Page: 11    Date Filed: 08/26/2015 Entry ID: 4310278

State would present evidence, and what the State's counsel and instructions to the grand jury would be. Initially, McCulloch promised the grand jurors and the public that the grand jury investigation would be transparent.

From Doe's perspective, the State's presentation of evidence and counsel to the grand jury investigating Wilson differed markedly and in significant ways from how the State presented evidence and counsel in the hundreds of matters earlier in the grand jury's term. In particular, the State's investigation of Wilson focused more strongly on the victim than did the State's investigation of other crimes earlier in the term. Additionally, the State presented the law to which the grand jurors were to apply the facts in a muddled and untimely manner when compared to the presentation of the law in other cases.

In Missouri, an indictment is returned only when at least nine out of twelve grand jurors concur in finding an indictment should issue. Mo. Rev. Stat. § 540.260. The decision of a grand jury to return no true bill of indictment means as few as four out of twelve grand jurors did not concur in finding an indictment should issue. *Id.* None of the charges presented to the grand jury investigating Wilson resulted in an indictment.

On November 24, 2014, Doe and the other grand jurors were discharged from service. Immediately afterward, McCulloch held a press conference in which he gave a lengthy oral statement about the grand jury's investigation of Wilson.

11

McCulloch also released some evidence presented to the grand jury, including transcripts, reports, interviews, and forensic evidence. McCulloch claimed he was required to release selected portions of the grand jury's record by Missouri's public records statutes.

Doe does not agree with how McCulloch characterized the grand jurors' view of the evidence, witnesses, and law. Moreover, in Doe's view, the release of a large number of records provides an appearance of transparency, but with heavy redactions and the absence of context, does not fully portray the grand jury proceedings.

For these reasons, Doe would like to speak about the experience of being a grand juror, including expressing her opinions about the evidence and the investigation. Doe also wishes to express opinions about: whether the release of records has truly provided transparency; whether evidence was presented differently in the Wilson case than in other cases, with the insinuation that Brown, not Wilson, was the wrongdoer; and, whether the grand jury was clearly counseled on the law. Furthermore, the current information available about the grand jurors' views is not entirely accurate—especially the implication that all grand jurors believed there was no support for any charges—and McCulloch's public characterization of the grand jurors' view of witnesses and evidence does not accord with Doe's own.

Appellate Case: 15-2667   Page: 13   Date Filed: 08/26/2015 Entry ID: 4310278

Doe believes sharing her experience could contribute to the current public dialogue concerning race relations and aid in educating the public about how grand juries function. She would also like to use her own experiences to advocate for legislative change to the way grand juries are conducted in Missouri. Her views would add to the public debate—occurring in Missouri and across the country—about the proper role of state grand juries and whether they continue to serve their original purpose of protecting the accused, or are now increasingly used to deprive those accused of crimes of due process to which they are otherwise entitled. Only Doe and the other grand jurors can counter McCulloch's narrative about their views on these issues. Moreover, the statutes prohibit Doe from discussing her experience privately, even within her own dwelling, subverting her substantial privacy interest in "the sanctuary of the home." *Frisby v. Schultz*, 487 U.S. 474, 484 (1988).

McCulloch is the state official who would prosecute a violation of the statutes Doe challenges, Sections 540.080, 540.120, 540.310, and 540.320, which restrict former grand jurors from disclosing or declaring information about the grand jury proceeding, including counsel from the State. Doe is therefore chilled from expressing her individual views and experiences on the grand jury because she reasonably fears imposition of criminal penalties or other punishment by

Appellate Case: 15-2667    Page: 14    Date Filed: 08/26/2015 Entry ID: 4310278

McCulloch or other government officials. These statutes prevent Doe from contradicting McCulloch's public statements about Doe's thoughts and opinions.

As applied in this case, any interests that might justify the permanent prohibition on Doe's public and private expression are outweighed by the First Amendment's guarantee of free speech.

After Doe filed this suit, McCulloch moved to dismiss on multiple grounds, including under two abstention doctrines: *Younger v. Harris*, 401 U.S. 37 (1971), and *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941). (J.A. 0075-0094; *see* J.A. 0091-0092.)

After briefing, the district court granted McCulloch's motion on abstention grounds without addressing McCulloch's other arguments for dismissal.[2] (J.A. 0598-0613.) The district court found there was no pending state proceeding, *see* J.A. 0609, preventing the application of *Younger* abstention. However, the district court identified several questions of state law that could resolve the case in Doe's favor without reaching Doe's First Amendment claim. In particular, the district court found that "the challenged state law in this matter is fairly susceptible to an

———————————

[2] In accordance with Fed. R. Civ. P. 5.1(b) and 28 U.S.C. § 2403(b), the district court certified to Missouri's Attorney General that the constitutionality of Missouri statutes had been called into question and gave the Attorney General until March 6, 2015 to intervene to defend the constitutionality of the statutes. The Attorney General did not intervene. (*See* J.A. 0072-0073.)

14

interpretation that would avoid any federal constitutional question" and that "[a] ruling favorable to Juror [on state law questions] would avoid the need to address any federal constitutional question." (J.A. 0610.)

Doe understood the district court to have exercised *Pullman* abstention.[3] This is because: (1) the court outlined and applied the considerations used "[w]hen deciding whether to abstain under the *Pullman* abstention doctrine" (J.A. 0608); (2) the court discussed the Eighth Circuit's leading *Pullman* abstention case, *Beavers v. Arkansas State Board of Dental Examiners*, 151 F.3d 838 (8th Cir. 1998) (J.A. 0608-0610); and (3) the district court concluded, "[i]n applying the *Beavers* factors to the present case, I conclude that the State of Missouri should be given the opportunity to address Juror's request to be released from her oath of secrecy and that abstention is appropriate." (J.A. 0612-0613.)

As directed by the district court, Doe filed a state-court petition, explicitly reserving her First Amendment claim in accordance with the procedure envisioned for *Pullman* cases in *England v. Louisiana State Board of Medical Examiners*, 375 U.S. 411 (1964). (J.A. 0624-0660.) In her state court petition, Doe noted she "exposes [her] federal constitutional claim in this state-court proceeding for the

---

[3] The editors of Westlaw shared this understanding, describing the district court's decision as holding "that *Pullman* abstention was appropriate." *Doe v. McCulloch*, No. 4:15 CV 6 RWS, 2015 WL 2092492 (E.D. Mo. May 5, 2015).

15

sole purpose of allowing th[e state c]ourt to construe the relevant state statutes against a backdrop of Doe's constitutional challenge under the First Amendment." (J.A. 0625.)

With regard to the federal district court case, Doe filed a motion to alter or amend the judgment under Fed. R. Civ. P. 59(e), asking the district court to stay— rather than dismiss—the action so Doe could press her federal claim in federal court if her state-law claims should be unsuccessful. (J.A. 0619-0623.) On June 24, 2015, the district court denied Doe's motion, stating that, contrary to Doe's understanding, it had applied the abstention doctrine set out in *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). (J.A. 0676-0678.)

Doe appeals the application of *Burford* abstention but does not dispute that *Pullman* abstention is appropriate. Doe requests only that this Court vacate the dismissal and remand for entry of the stay, in accordance with *Pullman* and *England*, while Doe pursues her state-law claims in Missouri's courts.

16

## STANDARD OF REVIEW

This Court reviews a district court's abstention-based dismissal for abuse of discretion, but it reviews *de novo* the "underlying legal questions." *Beavers v. Ark. State Bd. of Dental Exam'rs*, 151 F.3d 838, 840 (8th Cir. 1998) (affirming *Pullman* abstention and noting that legal questions are given "plenary review"); *City of Jefferson City v. Cingular Wireless, LLC*, 531 F.3d 595, 599 (8th Cir. 2008) (applying hybrid abuse-of-discretion/plenary review standard to district court's decision not to abstain under *Burford* and citing *Aaron v. Target Corp.*, 357 F.3d 768, 774 (8th Cir. 2004)); *see also United States v. Kentucky*, 252 F.3d 816, 825 (6th Cir. 2001) (commenting that, in abstention cases, "there is little practical distinction between review for abuse of discretion and review de novo" because district court's discretion "is narrowed by a federal court's obligation to exercise its jurisdiction in all but the most extraordinary cases" and quoting *Hachamovitch v. DeBuono*, 159 F.3d 687, 693 (2d Cir. 1998)).

17

## SUMMARY OF THE ARGUMENT

The issue in this appeal is whether *Burford* abstention is appropriate in a First Amendment as-applied challenge to state laws prohibiting or criminalizing speech.

Doe does not challenge the district court's decision to abstain under *Pullman* because the federal constitutional issue could be obviated by resolution of any underlying state-law statutory interpretation issues. Under *Pullman*, however, the district court should have retained jurisdiction—by staying, rather than dismissing, the case—so Doe may return to federal court, if necessary, to vindicate her federal constitutional right to free speech. This Court should remand for entry of a stay particularly because Doe has reserved her federal claim for resolution in federal court, using the procedure set forth in *England*.

The district court's abstention under *Burford* was in error. Abstention doctrines are not interchangeable. *Burford* abstention, in particular, is "sufficiently distinct to justify independent analyses." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 359-60 (1989). *Burford* is an exceedingly rare doctrine that applies only where the state has a unique interest and the federal court would have to construe and apply a complex regulatory scheme. Unlike a *Burford*-type case, this case is an ordinary as-applied challenge to the constitutionality of a state criminal statute under the First Amendment. Applying *Burford* abstention here is unprecedented, and the district court abused its discretion in so doing.

18

## ARGUMENT

## I. *BURFORD* ABSTENTION IS NOT APPROPRIATE

Cognizant of the principles of federalism and comity, the United States Supreme Court has created several abstention doctrines.[4]  But abstention remains "the exception, not the rule." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976).  The Court has cautioned time and again that abstention is "an extraordinary and narrow exception" to a district court's duty to adjudicate matters over which it has jurisdiction. *Id.*; *see also Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 728 (1996) (reiterating that the balance of state and federal interests inherent in an abstention decision "only rarely favors abstention").

Even among the various abstention doctrines, *Burford* is unusually circumscribed. *Melahn v. Pennock Ins., Inc.*, 965 F.2d 1497, 1505 (8th Cir. 1992) (in a *Burford* case, noting "[o]ur own precedent demands a narrow view of the abstention issue"); *Guillemard–Ginorio v. Contreras–Gomez*, 585 F.3d 508, 525 n.19 (1st Cir. 2009) (holding *Burford* is "primarily targeted toward the narrow class of cases seeking individualized review of agency-specific regulatory

---

[4]  Most courts identify the abstention doctrines as deriving from *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941); *Younger v. Harris*, 401 U.S. 37 (1971); *Wilton v. Seven Falls Co*., 515 U.S. 277 (1995); *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942); *La. Power & Light Co. v. City of Thibodaux*, 360 U.S. 25 (1959); *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976); and *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).

Appellate Case: 15-2667     Page: 20     Date Filed: 08/26/2015 Entry ID: 4310278

determinations"); *see also Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 19 (1983) (when considering the propriety of applying an abstention doctrine, district court's "discretion must be exercised under the relevant standard prescribed by this Court" for that particular type of abstention); *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 359-60 (1989) ("While we acknowledge that '[t]he various types of abstention are not rigid pigeonholes into which federal courts must try to fit cases,' the policy considerations supporting *Burford* are sufficiently distinct to justify independent analyses.") (alteration in original; citation omitted).

### A.   *Burford v. Sun Oil Company*

*Burford* itself demonstrates the exceptional circumstances in which this type of abstention may be appropriate. 319 U.S. 315 (1943). *Burford* involved a challenge to a Texas Railroad Commission decision permitting Burford to drill several wells. In holding that the district court had properly dismissed the complaint, the Court described the interdependence of oil and gas retrieval and the field-level conservation practices—particularly well-spacing—that must be observed to prevent enormous amounts of waste. The interest of the state of Texas was not merely in the conservation of "two of our most important natural resources," but in the state's critical and singular economic dependence on gas and oil, as well as industry-funded taxes for the support of its essential services. *Id.* at 320.

Appellate Case: 15-2667    Page: 21    Date Filed: 08/26/2015 Entry ID: 4310278

The Court found that not only did Texas have an exceptional interest in the "thorny" problem of oil and gas conservation, but it had also been working actively to protect that interest since the inception of the industry. *Id.* at 318. In *Burford* and a preceding case, the Supreme Court detailed at length the efforts of the Railroad Commission to work with other oil-producing states and the state's governing branches. The state courts, which the Court characterized as straddling the line between judicial and legislative, had been "working partners with the Railroad Commission in the business of creating a regulatory system for the oil industry." *Id.* at 326.

In fact, the state government had been so concerned with piecemeal review of the Commission's orders that it had vested appellate review by a state court in only one county. Despite this limitation and although the "important constitutional issues" had been "fairly well settled from the beginning," federal courts had been "constantly" called upon to determine whether the Commission had been acting outside the scope of its authority. *Id.* at 328. This had provoked countering responses by state actors, creating a "cycle of federal-state conflict." *Id.* at 332. Cognizant of the tense and "litigious history" of the particular gas field at issue, the Supreme Court held the district court had properly abstained. *Id.* at 328 n.24.

Appellate Case: 15-2667     Page: 22     Date Filed: 08/26/2015 Entry ID: 4310278

## B.  The Supreme Court's *Burford* jurisprudence

Unsurprisingly, given how narrowly it has characterized *Burford*, the Supreme Court has applied a *Burford*-type abstention analysis only twice.[5] To the contrary, it has found *Burford* inapposite in most cases.[6]

_____

[5]  Those two applications of *Burford* occurred long ago: once in a companion case concerning the same gas field as *Burford*, decided that same day, and once in the 1951 case *Alabama Public Service Commission v. Southern Railway Co.*, 341 U.S. 341, 347-48 (1951) (holding *Burford* abstention was appropriate where "a federal court has been asked to intervene in resolving the essentially local problem of balancing the loss to the railroad from continued operation of trains Nos. 7 and 8 with the public need for that service" in certain cities and towns). **The Supreme Court has neither expanded nor even applied the doctrine in the last 60 years.** *See Quackenbush*, 517 U.S. at 726 (noting "we have revisited the decision only infrequently in the intervening 50 years").

[6]  The dearth of Supreme Court applications of *Burford* is not for litigants' lack of trying. The Court has refused to extend *Burford* on nearly every occasion requested. *See Sprint Commc'ns, Inc. v. Jacobs,* 134 S. Ct. 584, 590 (2013) (holding *Younger* abstention did not apply in case where Iowa regulatory proceedings were underway to determine whether a kind of intrastate communication was covered by federal law and noting the parties agreed *Burford* also did not apply); *Ankenbrandt v. Richards*, 504 U.S. 689, 705-06 & n.8 (1992) (commenting *Burford* did not apply in the instant tort case and even if it could ever apply in a domestic-relations case—perhaps, for example, in the rare case where a prior-filed federal suit depended on the outcome of an ongoing divorce—"it may be appropriate for the court to retain jurisdiction" to resolve matter after state-law issue was decided); *Lewis v. BT Inv. Managers, Inc.*, 447 U.S. 27, 33 (1980) (affirming district court finding that state statutes prohibiting out-of-state banks from operating investment services in Florida violated the Commerce Clause, thereby approving Fifth Circuit decision that *Burford* did not apply); *Zablocki v. Redhail*, 434 U.S. 374, 379 n.5 (1978) (dispensing with appellant's *Burford* argument, made on appeal, because striking down unconstitutional state statute relating to marriage would not disrupt state efforts to establish coherent policy and noting that "there is, of course, no doctrine requiring abstention merely because

22

In two major cases where the Court found *Burford* inapplicable, it took the

opportunity to restrict the doctrine further. *See New Orleans Pub. Serv., Inc. v.

Council of City of New Orleans*, 491 U.S. 350 (1989) (*NOPSI*) and *Quackenbush v.

Allstate Ins. Co.*, 517 U.S. 706 (1996).

---

resolution of a federal question may result in the overturning of a state policy");
*Hostetter v. Idlewild Bon Voyage Liquor Corp.*, 377 U.S. 324, 329 (1964) (holding
New York's attempt to prohibit airport liquor seller from distributing liquor
overseas violated Commerce Clause, despite strong state interest in liquor
regulation evidenced by Twenty-first Amendment, and agreeing with district court
that *Burford* did not apply because there was "no danger that a federal decision
would work a disruption of an entire legislative scheme of regulation");
*Lumbermen's Mut. Cas. Co. v. Elbert,* 348 U.S. 48, 53 (1954) (in case involving
constitutionality of state direct-action statute, rejecting petitioner's *Burford*
argument and commenting, "in *Burford*, jurisdiction was declined to avoid a
potential interference with a state's administrative policy-making process, a
consideration not present here"); *Meredith v. City of Winter Haven*, 320 U.S. 228,
236-37 (1943) (*Burford* considerations did not apply in case concerning city's
bond repayment liability, even where underlying Florida law was clearly unsettled,
because adjudication would "not require the federal court to determine or shape
state policy governing administrative agencies").

Compare *Kaiser Steel Corp. v. W. S. Ranch Co.,* 391 U.S. 593, 593 (per
curiam) (1968) (in a case where only the concurrence explicitly referred to
*Burford*, directing court to **stay** case while state proceeding determined whether
New Mexico state law protecting water rights superseded its law prohibiting
trespass); *Spector Motor Serv. v. McLaughlin*, 323 U.S. 101, 105 (1944) (citing
*Burford* and remanding for **stay** while state court considered underlying local
question that would avoid constitutional issue); *Order of Ry. Conductors of Am. v.
Pitney*, 326 U.S. 561, 568 (1946) (citing *Burford* and remanding for **stay** while
Adjustment Board, created by Congress for that purpose, resolved dispute between
union and railroad).

23

In *NOPSI*, a New Orleans utility sought to enjoin the decision of a regulatory body that had denied the utility's request for a rate increase. Despite several similarities to *Burford*, the Court decided abstention was inappropriate because the utility's primary claim was based on a violation of federal law. 491 U.S. at 362 ("Unlike a claim that a state agency has misapplied its lawful authority or has failed to take into consideration or properly weigh relevant state-law factors, federal adjudication of this sort of . . . claim would not disrupt the State's attempt to ensure uniformity in the treatment of an 'essentially local problem.'"); *see also Allegheny Cnty. v. Frank Mashuda Co.,* 360 U.S. 185, 189 (1959) (characterizing *Burford* as applying in actions where federal-court disposition "would disrupt a state administrative process"); *England v. La. State Bd. of Med. Exam'rs*, 375 U.S. 411, 424 (1964) (Douglas, J., concurring) (citing *Burford* as applying in actions challenging "state administrative action"); *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 505 (1947) (commenting that *Burford* applies in cases where the federal "court would have to participate in the administrative policy of a state").

Similarly, in *Quackenbush*, the Supreme Court held *Burford* inapplicable to actions solely for damages. 517 U.S. at 731. Of course, *Quackenbush* is not directly on point, but its language—characterizing *NOPSI* as an "illustrat[ion of] the narrow range of circumstances in which *Burford* can justify the dismissal of a federal action"—is instructive in demonstrating that Doe's First Amendment claim

24

is different from those advanced in *Burford* and its few progeny. *Id.* at 727; *see also Melahn v. Pennock Ins., Inc.*, 965 F.2d 1497, 1507 (8th Cir. 1992) ("*NOPSI* does not permit a broad view of abstention.").[7]

Perhaps most revealing of the Supreme Court's assessment of *Burford* is its earlier holding in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 825 (1976). In that case, the Court created an entirely new abstention doctrine rather than stretch *Burford* to fit a case that *Burford* was ill-suited to cover. Considering whether *Burford* could encompass the action, a water-rights dispute subject to an ongoing state proceeding, the Court concluded flatly that the existing doctrines "[did] not include this case." *Id.*

The Supreme Court's longstanding reluctance to expand or even apply *Burford* demonstrates that *Burford* is an unusually narrow doctrine, appropriate only in the most extraordinary circumstances.

---

[7] In deciding *Quackenbush*, the Supreme Court reversed and remanded *Warmus v. Melahn*, 110 F.3d 566 (8th Cir. 1997). *Warmus* involved an insurer's action for money damages against a former director of the Missouri Department of Insurance, alleging the director conspired to run the insurer out of business. *Id.* at 567. The Eighth Circuit had affirmed the district court's decision to abstain and dismiss under *Younger*. *Id.* Upon remand from the Supreme Court, the Eighth Circuit considered but declined to fit this *Younger* case into the "very limited" and unusual circumstances allowing dismissal of an action at law. *Id.* at 568. The Supreme Court's remand for reconsideration demonstrates courts should be cautious about *dismissing* actions over which they have jurisdiction, even where abstention is appropriate.

25

## C.     This Court's *Burford* jurisprudence

Like the Supreme Court, this Court has applied *Burford* abstention sparingly. This case is similar to the many cases in this circuit recognizing *Burford*'s limited applicability. *See Melahn v. Pennock Ins., Inc.*, 965 F.2d 1497, 1506 (8th Cir. 1992) ("Plaintiff has cited no case from this court approving *Burford* abstention. Although this is not determinative, we believe it is a relevant consideration because we have emphasized repeatedly the narrow and extraordinary basis for such action."); *Moe v. Brookings Cnty.*, 659 F.2d 880, 884 (8th Cir. 1981) (reversing summary abstention order from district court); *Bauer v. Transitional Sch. Dist. of St. Louis*, 88 F. Supp. 2d 999, 1005 (E.D. Mo. 2000) (declining to abstain in suit to compel placement of student bill of rights on city election ballot, noting state constitutional questions are "not grounds for federal abstention" and *Burford* was "inapplicable to this case because, while state law and policy are involved, significant federal questions are raised"); *People Tags, Inc. v. Jackson Cnty. Legislature*, 636 F. Supp. 1345, 1349-50 (W.D. Mo. 1986) (holding "the policy of Jackson County may be affected by the federal constitutional implications of the regulatory scheme embodied in these ordinances, but such a conflict between the federal constitution and local ordinances does not warrant staying the exercise of federal jurisdiction").

26

In *Association for Retarded Citizens of North Dakota v. Olson*, 713 F.2d 1384 (8th Cir. 1983), this Court affirmed a district court's refusal to apply *Burford*. The plaintiffs were individuals with mental disabilities who sought injunctive relief against a state official, challenging state-provided treatment and confinement under the Fourteenth Amendment and federal statutes. Noting that claims "involving questions of civil rights are the least likely candidates for abstention," the *Olson* Court held the federal courts were required to exercise their jurisdiction because the case involved "substantial federal constitutional rights," and there was no "specialized state court" to take up the claims upon remand. *Id.* at 1390-91. The Court found "developmental disabilities [were] not a highly regulated area" of state law. *Id.* at 1390. Although there were numerous plaintiffs, the state economy was not "inextricably intertwined" with the issues posed by the claim "so as to affect most individuals in the state." *Id.* at 1390-91.

**D.**    ***Burford* does not apply in this case, where there is no complex state regulatory system, Missouri has no unique economic interest, Missouri has not designated a specialized forum for this claim, and Doe has asserted only a federal constitutional claim**

As in *Olson*, there is no danger of disturbing the delicate balance of federalism here. There is no underlying state regulatory proceeding or ongoing administrative effort to craft a coherent state policy. This absence is particularly acute because Appellant does not challenge the application of *Pullman* abstention, *see infra*, and

27

so is content to wait until her state-court proceeding[8] concludes before returning to federal court (if necessary). **She seeks a stay, not uninterrupted continuation of the federal action.**

As master of the forum, Doe chose to file suit in federal court, on federal-question grounds, seeking to vindicate a federal constitutional right. *See Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 695 (8th Cir. 1997) ("In general, federal courts give considerable deference to a plaintiff's choice of forum"); *Fru-Con Const. Corp. v. Controlled Air, Inc.*, 574 F.3d 527, 540 (8th Cir. 2009) (applying *Terra* to abstention case). Unlike the *Burford* plaintiff, Doe brought no state-law claims.

### 1. *Missouri has no unique interest at stake in this action*

The state of Missouri has no economic or other unique interest at stake that sets it apart from other states. More than half the states employ grand juries. Federal courts have interpreted particular state statutes relating to state grand jury confidentiality in the past. *See Beacon Journal Pub. Co. v. Unger*, 532 F. Supp. 55, 58 (N.D. Ohio 1982) (rejecting contention that *Pullman* abstention should apply in case concerning propriety of state statute requiring oath of secrecy for grand jury

---

[8]  Appellant refiled in state court after the district court abstained. While her federal case was based *only* on the First Amendment, Appellant added declaratory judgment claims to resolve any underlying issues of state law identified by the district court and reserved her right to return federal court to vindicate her federal constitutional rights. (J.A. 0624-0660.)

28

witnesses; striking down oath as violative of state criminal procedure rule); *see generally Butterworth v. Smith*, 494 U.S. 624 (1990) (holding that state statute prohibiting grand jury witness from discussing his testimony violated First Amendment); *see also Stilp v. Contino*, 743 F. Supp. 2d 460 (M.D. Pa. 2010) (striking down, as contrary to First Amendment, confidentiality requirement of state statute governing ethics complaints); *Worrell Newspapers of Ind., Inc. v. Westhafer*, 739 F.2d 1219 (7th Cir. 1984), *aff'd sub nom. Westhafer v. Worrell Newspapers of Ind., Inc.*, 469 U.S. 1200 (1985) (striking down, as contrary to First Amendment, state statute prohibiting publication of names of persons implicated in sealed indictment).

Importantly, in *Burford*, it was not just Texas's sovereign interest in its natural resources that justified abstention but Texas' exceptional reliance on the oil and gas industry as critical to "the whole economy of the state." *Burford*, 319 U.S. at 320. Missouri has no such unique interest here.

### 2. *There is no complex regulatory system at issue*

Unlike the Texas state court in *Burford*, which oversaw day-to-day operations on the gas field at issue, Missouri state courts do not supervise a complex regulatory system governing grand juries—and the Missouri courts could not do so because there *is* no complex regulatory system governing grand juries in this state. Although the presence of a complex regulatory scheme is not sufficient unto itself

29

to provide a basis for *Burford* abstention, *see NOPSI*, 491 U.S. at 361-62, courts have long held the absence of such a scheme prevents the application of *Burford* altogether. *See Casey v. FDIC*, 583 F.3d 586, 592 (8th Cir. 2009) (narrowly characterizing *Burford* as applying "when a state has established a complex regulatory scheme supervised by state courts and serving important state interests, and when resolution of the case demands specialized knowledge and the application of complicated state laws").

### 3. *Missouri has not designated a specialized state forum to hear this kind of claim*

The state of Missouri has not demonstrated an exceptional interest in preventing piecemeal litigation by designating a single court to hear claims challenging its criminal statutes. *See Melahn*, 965 F.2d at 1504 (listing the four factors courts often considered when deciding whether to apply *Burford* in insurance cases and including, as a factor, "whether state procedures indicate a desire to create special state forums to regulate and adjudicate these issues") (quoting *Grimes v. Crown Life Ins. Co.*, 857 F.2d 699, 704-05 (10th Cir. 1988), *cert. denied*, 489 U.S. 1096 (1989)).[9] This stands in stark contrast to what Texas had done before *Burford*: restricted well-spacing claims to not just one kind of state court, but also to only one county.

---

[9] The *Melahn* Court also recognized that even these relatively narrow factors might be too broadly construed and were of limited value after *NOPSI*. 965 F.2d at 1507.

Appellate Case: 15-2667    Page: 31    Date Filed: 08/26/2015 Entry ID: 4310278

4. *State and local interest does not justify dismissal, which is an unprecedented conclusion for an as-applied constitutional challenge to a criminal statute*

The tradition of grand jury secrecy is undoubtedly an issue of great interest to states and local communities. But not all issues "important . . . to the local community and the state government" should be excluded from federal adjudication, particularly if those issues relate to federal constitutional claims. *Bob's Home Serv., Inc. v. Warren Cnty.*, 755 F.2d 625, 627 (8th Cir. 1985) (holding abstention appropriate in action challenging validity of zoning in county's master plan under state law, Takings Clause, and Equal Protection Clause, but concluding district court improperly dismissed rather than stayed the action in accordance with *Pullman/England* procedure).

The district court's extension of *Burford* to a run-of-the-mill constitutional challenge to a state criminal statute is unprecedented. *See Steffel v. Thompson*, 415 U.S. 452, 473-75 (1974) (categorically rejecting argument that a state's "interest in unencumbered enforcement of its laws outweighs the minimal federal interest in protecting the constitutional rights of only a single individual"; holding instead that "the Stat[e]'s concern with potential interference in the administration of its criminal laws is of lesser dimension when an attack is made upon the constitutionality of a state statute as applied" and that neither *Younger* abstention nor any federalism concerns prevented as-applied First Amendment challenge to

31

state statute based on threatened prosecution); *see also Record Head Inc. v. Olson*, 476 F. Supp. 366 (D.N.D. 1979) (holding that *Burford* abstention did not apply in as-applied First Amendment challenge to criminal statute).

## II. ASSUMING *PULLMAN* ABSTENTION APPLIES, THE DISTRICT COURT SHOULD HAVE RETAINED JURISDICTION

Doe does not challenge the district court's conclusion that it should abstain under *Pullman*. Rather, Doe reiterates the argument she made in her Rule 54(b) motion to alter or amend the judgment: under all but the rarest circumstance, *Pullman* abstention requires the federal court retain jurisdiction over an action so a litigant can return to federal court after state-court proceedings have concluded to vindicate her federal constitutional rights.

This dual-court procedure is set out in *England v. Louisiana State Board of Medical Examiners*, 375 U.S. 411 (1964), and is known as an *England* reservation of rights. *See Reprod. Health Servs. of Planned Parenthood of St. Louis Region, Inc. v. Nixon*, 428 F.3d 1139, 1142 n.2 (8th Cir. 2005) ("When a federal court abstains under *Pullman,* the party that commenced the action in federal court may reserve its right to return to federal court to litigate the federal issues by making an '*England* reservation.'"). To make an *England* reservation, a plaintiff must inform the state court she has a constitutional claim but does not want the state court to resolve that claim.

32

In accordance with *England*, Doe brought suit in Missouri state court. (J.A. 624-0660.) As *England* requires, Doe informed the state court she has a constitutional claim but would like to reserve her right to litigate that claim in federal court. *See* J.A. 0625, 0633, 0634; *Great Plains Trust Co. v. Union Pac. R.R. Co.*, 492 F.3d 986, 996 (8th Cir. 2007) ("we may take judicial notice of proceedings in other courts that relate directly to matters at issue").

Under *Pullman*, Doe has a well-established right to return to federal court if her claim is not resolved by litigating any underlying state-law issues. *Coley v. Clinton*, 635 F.2d 1364, 1377 (8th Cir. 1980) ("[A]bstention under the *Pullman* doctrine contemplates retention of jurisdiction over the federal claims, pending the disposition of state law issues in the state proceedings. Therefore, the proper procedure after *Pullman*-type abstention is for the district court to retain jurisdiction."); *Bob's Home Serv., Inc. v. Warren Cnty.*, 755 F.2d 625, 628 (8th Cir. 1985) (*Pullman* "involves not an abdication of federal jurisdiction, but only the postponement of its exercise"); *see also Growe v. Emison*, 507 U.S. 25, 32 n.1 (1993) (in a unanimous opinion, noting that although the Supreme Court had called *Pullman* a form of abstention, "it would be preferable to speak of *Pullman* 'deferral'"); *England*, 375 U.S. at 421 ("the litigant is in no event to be denied his

33

right to return to the District Court unless it clearly appears that he voluntarily . . . and fully litigated his federal claims in the state courts").[10]

In a similar case involving constitutional claims, this Court held that dismissal was inappropriate and a district court should have retained jurisdiction. *See Bob's Home Serv.*, 755 F.2d at 628. In that case, plaintiffs owned a hazardous-waste

---

[10] *See also Geier v. Mo. Ethics Comm'n*, 715 F.3d 674, 679 n.6 (8th Cir. 2013) (in a *Younger* abstention case, contrasting *Pullman* abstention as procedure in which "parties were remitted to state courts to litigate their state-law issues, but could return to federal court to adjudicate their federal-law claims if the resolution of the state-law issue 'did not prove dispositive of the case'") (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 76 (1997)); *C.R. v. Adams*, 649 F.2d 625 (8th Cir. 1981) (applying *England* procedure and noting that plaintiff, who alleged federal due-process violation, "may either present his federal constitutional claims to the state courts or reserve the right to return to the federal court"); *Robinson v. City of Omaha*, 866 F.2d 1042, 1045 (8th Cir. 1989) (applying *England* procedure and directing district court to retain jurisdiction); *Edwards v. Ark. Power & Light Co.*, 683 F.2d 1149, 1157 (8th Cir. 1982) (same); *Easter v. Olson*, 552 F.2d 252, 255 (8th Cir. 1977) (same); *Snyder's Drug Stores v. Taylor*, 227 F.2d 162, 165 (8th Cir. 1955) (same); *Chicago, B. & Q. R.R. Co. v. City of N. Kansas City*, 276 F.2d 932, 941 n.1 (8th Cir. 1960) (same); *Green v. Phillips Petroleum Co.*, 119 F.2d 466, 469 (8th Cir. 1941) (same); *Bldg. Owners & Managers Ass'n of Metro. St. Louis, Inc. v. City of St. Louis*, No. 4:08CV352 HEA, 2008 WL 4948453, at *3 (E.D. Mo. Nov. 10, 2008) (in declaratory judgment action, denying motion to dismiss and granting motion to stay, based on *Pullman*); *Alsager v. Dist. Ct. of Polk Cnty.*, 518 F.2d 1160, 1165 (8th Cir. 1975) (under *England*, declaratory-judgment plaintiffs "[were] entitled to have the federal court find those facts necessary for a decision on their constitutional claim"); *Wisconsin v. Constantineau*, 400 U.S. 433, 438 (1971) (approving *England* procedure); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 10 (1983) ("A district court stay pursuant to *Pullman* abstention is entered with the expectation that the federal litigation will resume in the event that the plaintiff does not obtain relief in state court on state-law grounds.").

Appellate Case: 15-2667    Page: 35    Date Filed: 08/26/2015 Entry ID: 4310278

facility in Warren County, Missouri, that would have been prohibited from enlarging under the county's newly adopted master plan. Plaintiffs alleged the master plan was invalid under Missouri statute and, even if the master plan met the requirements of Missouri law, it constituted an unconstitutional taking and violated plaintiffs' federal due process rights. The district court dismissed, finding plaintiffs' claims were not ripe and, in the alternative, it should abstain. This Court reversed and remanded, holding the claims were ripe and, although the district court properly abstained, it should have retained jurisdiction over the case in accordance with the *England* procedure.[11]

As this Court recognized in *Bob's Home Service*, the distinction between deferring and refusing jurisdiction is an important one. *See also Growe*, 507 U.S. at 32 n.1. Although courts should abstain under *any* doctrine in only exceptional and rare circumstances, courts should be even more wary of dismissing as a result of abstention. In this case, although it may have been proper for the district court to abstain, the district court should have stayed the action under *England* so Doe can return to federal court if necessary.

---

[11] The Court also noted that, if the district court had intended to abstain under *Burford*, such an abstention had been inappropriate. *Burford* applies only in cases "in which the subject matter of the action is highly complex or unique, or as to which the state has established a special system of adjudication." *Id.* at 628. Assessing the validity of the master plan under the state's planning and zoning statutes, though they were unclear, was not the kind of complex exercise susceptible to *Burford* abstention.

35

## **CONCLUSION**

Appellant requests that this Court reverse the district court's dismissal of this action and remand for entry of a stay.

/s/ Anthony E. Rothert
Anthony E. Rothert
Gillian R. Wilcox
Jessie Steffan
American Civil Liberties Union
    of Missouri Foundation
454 Whittier Street
St. Louis, Missouri 63108
Phone: (314) 652-3114
Fax: (314) 652-3112

Sowers & Wolf, LLC
D. Eric Sowers
Ferne P. Wolf
Joshua M. Pierson
530 Maryville Centre Drive
Suite 460
St. Louis, Missouri 63141
(314) 744-4010

***Attorneys for Appellants***

36

# CERTIFICATE OF COMPLIANCE

I, Anthony E. Rothert, do hereby certify: (1) Appellants' Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 8,292 words, according to the word count of Microsoft Office Word 2007; (2) Appellants' Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word 2007 in 14-point Times New Roman; and (3) the Brief has been scanned for viruses and is virus free.

/s/ Anthony E. Rothert

Appellate Case: 15-2667    Page: 38    Date Filed: 08/26/2015 Entry ID: 4310278

# **CERTIFICATE OF SERVICE**

I, Anthony E. Rothert, do hereby certify that I have filed the foregoing Appellants' Brief electronically with the Court's CM/ECF system with a resulting electronic notice to all counsel of record on August 26, 2015. I further certify that one true and correct copy of the Joint Appendix was sent August 26, 2015, by first-class mail, postage prepaid, to Appellees' counsel. I further certify that one true and correct paper copy of the Brief and Addendum, upon receiving notification from the Court that the electronic version of the Brief has been accepted and docketed, will be sent via first-class mail to Appellees' counsel.

/s/ Anthony E. Rothert